FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 15, 2020

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| REBECCA E.,[1] <br>                 Plaintiff, <br><br>     vs. <br><br> ANDREW M. SAUL, <br> COMMISSIONER OF SOCIAL <br> SECURITY, <br>                 Defendant. | No. 2:19-cv-00314-MKD <br><br> ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT <br><br> ECF Nos. 13, 14 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 13, 14. The parties consented to proceed before a magistrate judge. ECF No. 6. The Court, having reviewed the administrative record and the parties' briefing,

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

ORDER - 1

1  is fully informed.  For the reasons discussed below, the Court denies Plaintiff's

2  motion, ECF No. 13, and grants Defendant's motion, ECF No. 14.

3  **JURISDICTION**

4      The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g);

5  1383(c)(3).

6  **STANDARD OF REVIEW**

7      A district court's review of a final decision of the Commissioner of Social

8  Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

9  limited; the Commissioner's decision will be disturbed "only if it is not supported

10  by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

11  1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

12  reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159

13  (quotation and citation omitted).  Stated differently, substantial evidence equates to

14  "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

15  citation omitted).  In determining whether the standard has been satisfied, a

16  reviewing court must consider the entire record as a whole rather than searching

17  for supporting evidence in isolation. *Id.*

18      In reviewing a denial of benefits, a district court may not substitute its

19  judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

20  1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

ORDER - 2

1    rational interpretation, [the court] must uphold the ALJ's findings if they are

2    supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

3    F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

4    ALJ's decision on account of an error that is harmless." *Id.* An error is harmless

5    "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

6    *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's

7    decision generally bears the burden of establishing that it was harmed. *Shinseki v.*

8    *Sanders*, 556 U.S. 396, 409-10 (2009).

9                              **FIVE-STEP EVALUATION PROCESS**

10           A claimant must satisfy two conditions to be considered "disabled" within

11   the meaning of the Social Security Act. First, the claimant must be "unable to

12   engage in any substantial gainful activity by reason of any medically determinable

13   physical or mental impairment which can be expected to result in death or which

14   has lasted or can be expected to last for a continuous period of not less than twelve

15   months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's

16   impairment must be "of such severity that he is not only unable to do his previous

17   work[,] but cannot, considering his age, education, and work experience, engage in

18   any other kind of substantial gainful work which exists in the national economy."

19   42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

20

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more

ORDER - 4

severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age,

1    education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),

2    416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

3    Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

4    404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other

5    work, the analysis concludes with a finding that the claimant is disabled and is

6    therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

7         The claimant bears the burden of proof at steps one through four above.

8    *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

9    step five, the burden shifts to the Commissioner to establish that 1) the claimant is

10   capable of performing other work; and 2) such work "exists in significant numbers

11   in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v.*

12   *Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

13                              **ALJ'S FINDINGS**

14        On April 24, 2017, Plaintiff applied both for Title II disability insurance

15   benefits and Title XVI supplemental security income benefits alleging a disability

16   onset date of June 19, 2016.  Tr. 181, 196, 331-47.  The applications were denied

17   initially and on reconsideration.  Tr. 243-51, 255-77.  Plaintiff appeared before an

18   administrative law judge (ALJ) on June 4, 2018.  Tr. 132-80.  On August 22, 2018,

19   the ALJ denied Plaintiff's claim.  Tr. 12-33.

20

At step one of the sequential evaluation process, the ALJ found that Plaintiff had engaged in substantial gainful activity from June 2016 through September 2016. Tr. 17. The ALJ also found that there had been a continuous 12-month period during which Plaintiff did not engage in substantial gainful activity. Tr. 18. At step two, the ALJ found that Plaintiff had the following severe impairments: major depressive disorder, posttraumatic stress disorder (PTSD), social phobia, and obsessive compulsive disorder. Tr. 18

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. Tr. 18. The ALJ then concluded that Plaintiff had the RFC to perform a full range of work at all exertional levels with the following nonexertional limitations:

> [Plaintiff] is limited to simple, routine tasks with a reasoning level of 2 or less; she requires a routine, predictable work environment with no more than occasional changes and simple decision-making; and she is limited to occasional, superficial contact with the public, coworkers, and supervisors.

Tr. 19.

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. Tr. 24. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that

ORDER - 7

Plaintiff could perform, such as laundry worker II, mail clerk, and printed circuit board assembler.  Tr. 25.  Alternatively, the ALJ found that Plaintiff was capable of other work even if she were physically limited to the light exertional level, with a sit/stand option at will; no climbing ladders, ropes, or scaffolds but occasionally performing all other postural activities; with no concentrated exposure to extreme cold, vibration, or hazards.  Tr. 25.  The vocational expert testified that given all of these factors, Plaintiff would be able to perform the jobs of collator operator, office helper, and mail clerk.  Tr. 25.  Therefore, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of June 19, 2016, though the date of the decision.  Tr. 25.

On July 26, 2019, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

1.  Whether the ALJ conducted a proper step-two analysis;

2.  Whether the Appeals Council erred in refusing to consider medical evidence submitted after the ALJ's decision;

3.  Whether the ALJ conducted a proper step-three analysis;

4.  Whether the ALJ properly evaluated Plaintiff's symptom claims; and

5.  Whether the ALJ properly incorporated the evidence into the RFC.

ECF No. 13 at 3.

## DISCUSSION

### A.   Step Two

Plaintiff contends the ALJ erred by failing to identify Plaintiff's lumbar spine condition as a severe impairment at step two. ECF No. 13 at 6-9. At step two of the sequential process, the ALJ must determine whether the claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). To establish a severe impairment, the claimant must first demonstrate that the impairment results from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical or laboratory diagnostic techniques. 20 C.F.R. §§ 404.1521, 416.921. In other words, the claimant must establish the existence of the physical or mental impairment through objective medical evidence (i.e., signs, laboratory findings, or both) from an acceptable

ORDER - 9

medical source; the medical impairment cannot be established by the claimant's statement of symptoms, a diagnosis, or a medical opinion.  20 C.F.R. §§ 404.1521, 416.921.

An impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work…"  Social Security Ruling (SSR) 85-28 at *3.  Similarly, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities; which include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; using judgment, responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting.  20 C.F.R. §§ 404.1522(a), 416.922(a); SSR 85-28.[2]

Step two is "a de minimus screening device [used] to dispose of groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  "Thus, applying

---

[2] The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in SSR 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

ORDER - 10

1  our normal standard of review to the requirements of step two, [the Court] must

2  determine whether the ALJ had substantial evidence to find that the medical

3  evidence clearly established that [Plaintiff] did not have a medically severe

4  impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687

5  (9th Cir. 2005).

6         Here, the ALJ concluded that Plaintiff's major depressive disorder,

7  posttraumatic stress disorder, social phobia, and obsessive compulsive disorder

8  were severe impairments. Tr. 18. The ALJ also concluded that Plaintiff had the

9  following non-severe impairments: lumbar facet disease, tachycardia,

10  hypothyroidism, rib fracture, JBS, urinary tract infections, intermittent diarrhea,

11  unilateral nephrectomy, vitamin deficiencies, and alcohol abuse. Tr. 18. The ALJ

12  determined the record showed that these impairments did not cause significant

13  vocational limitations for at least 12 consecutive months. Tr. 18.

14         Plaintiff asserts the ALJ erred by finding that her back pain was not a severe

15  impairment. ECF No. 13 at 6. Although Plaintiff cites treatment notes where

16  lumbar pain was diagnosed, observed, or reported, the "mere diagnosis of an

17  impairment … is not sufficient to sustain a finding of disability." *Key v. Heckler*,

18  754 F.2d 1545, 1549 (9th Cir. 1985). Plaintiff identifies no evidence in the record

19  that her back pain had any impact on her basic work abilities. ECF No. 13 at 6-9.

20  While there were notations in the medical record that Plaintiff endorsed symptoms

ORDER - 11

of back pain, *see, e.g.*, Tr. 983, 997, 1026, 1030, 1777, 1802, the ALJ's finding that

Plaintiff's back condition was not a severe impairment is supported by objective

medical evidence and clinical observations.  *See, e.g.,* Tr. 1952 (January 9, 2018:

results from Plaintiff's electromyography (EMG) were normal); Tr. 1662-63 (June

22, 2016: x-rays of Plaintiff's lumbar and thoracic spine were unremarkable); Tr.

1273-74; 1319-24 (August 6, 2014 and December 2016: MRIs of Plaintiff's

lumbar, cervical, and thoracic spine were unremarkable); Tr. 997, 1030, 1776,

1804-05 (physical examinations were unremarkable); Tr. 145 (June 4, 2018: James

McKenna, M.D., testified that Plaintiff had no severe physical impairments); Tr.

1475-1508 (March 31, 2017 and May 3, 2017: upon independent medical

examination, neurologist Barbara Jessen, M.D., orthopedist Anne McCormick,

M.D., and physical medicine and rehabilitation specialist Dennis Chong, M.D.,

opined that Plaintiff had no objective abnormalities or physical reasons to prevent

her from working).  On this record, the ALJ reasonably concluded that Plaintiff's

back pain was not a severe impairment.  Tr. 18.

Moreover, Plaintiff has failed to establish any harmful error resulting from

the ALJ's decision finding that her back pain was a non-severe impairment.  Even

if the ALJ should have determined that her back condition was a severe

impairment, any error would be harmless because the step was resolved in

Plaintiff's favor.  *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055

(9th Cir. 2006); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).  Further, the ALJ found that Plaintiff was capable of working as a mail clerk, which is classified as a light exertional level job, and as a printed circuit board assembler, which is classified as a sedentary exertional level job.  Tr. 25.  The ALJ also made alternative RFC findings at step five and determined that Plaintiff was capable of other work even if she were physically limited to the light exertional level, with a sit/stand option at will; no climbing ladders, ropes, or scaffolds but occasionally performing all other postural activities; with no concentrated exposure to extreme cold, vibration, or hazards.  Tr. 25.  The vocational expert testified that given all of these factors, Plaintiff would be able to perform the jobs of collator operator, office helper, and mail clerk.  Tr. 25.  Plaintiff makes no showing that her back pain created limitations not already accounted for in the RFC.  *See Shinseki*, 556 U.S. at 409-10 (the party challenging the ALJ's decision bears the burden of showing harm).  Thus, the ALJ's step two finding is legally sufficient.

## B.    Additional Evidence Submitted to the Appeals Council

Plaintiff argues the Appeals Council incorrectly determined that additional evidence submitted to it was not material, and therefore erroneously failed to consider the additional evidence.  ECF No. 13 at 17-19.  The Social Security regulations permit a claimant to submit additional evidence to the Appeals Council.  20 C.F.R. §§ 404.900(b), 416.1400(b).  The Appeals Council is required

1    to consider new and material evidence if it "relates to the period on or before the

2    date of the [ALJ's] hearing decision" and "there is a reasonable probability that the

3    additional evidence would change the outcome of the decision." 20 C.F.R. §§

4    404.970(a)(5) & (b), 416.1470(a)(5) & (b) (2017).  Evidence that meets the criteria

5    is to be considered by the Appeals Council and incorporated into the administrative

6    record as evidence, "which the district court must consider when reviewing the

7    Commissioner's final decision for substantial evidence." *Brewes v. Comm'r of*

8    *Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012).  Pursuant to agency policy,

9    a copy of evidence *not* meeting the criteria and therefore not considered by the

10   Appeals Council is nonetheless included as part of the certified administrative

11   record filed with this Court, although by law, the rejected evidence falls outside the

12   scope of the Court's substantial-evidence review.  *See* Soc. Sec. Admin. Hrgs.,

13   Appeals, & Litig. Law Man. ("HALLEX"), HALLEX § I-3-5-20, available at

14   https://www.ssa.gov/OP_Home/hallex/I-03/I-3-5-20.html (addressing how

15   additional evidence is to be handled).

16        Here, although the additional evidence concerning Plaintiff's back pain does

17   relate to the period at issue, this evidence is not material.  *See* Tr. 2 (The additional

18   evidence "does not show a reasonable probability that it would change the outcome

19   of the decision.").  New evidence is material if it creates a reasonably possibility

20   that the outcome of the case would be different.  *Staley v. Massanari*, 17 F. App'x

ORDER - 14

609, 610 (9th Cir. 2001) (interpreting Appeals Council's decision and citing *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380-81 (9th Cir. 1984)). Plaintiff argues that the additional records show "continuing deficits" in Plaintiff's lumbar spine, including a disc bulge at L3-L4. ECF No. 13 at 18 (citing Tr. 98-99). However, the records cited by Plaintiff indicate that Plaintiff had "mild, posterior bulging of the intervertebral disc without associated nerve root impingement or spinal stenosis" at L3-L4. Tr. 99-100. Further, in the additional records, Plaintiff's provider noted that her MRI "shows no spinal stenosis and only mild degenerative disc disease (which is not uncommon)." Tr. 98. Plaintiff makes no further argument and does not explain how these records demonstrate that she was more limited than the ALJ found, and thus, Plaintiff fails to show a reasonable probability that this additional evidence would change the outcome of the decision. For these reasons, the Court finds that the Appeals Council did not err in declining to consider and exhibit the additional evidence.

**C.    Step Three**

Plaintiff contends that the ALJ erred by finding Plaintiff's mental impairments did not meet listings 12.04 and 12.15. ECF No. 13 at 12-15. At step three, the ALJ must determine if a claimant's impairments meet or equal a listed impairment. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The Listing of Impairments "describes for each of the major body systems impairments [which

1  are considered] severe enough to prevent an individual from doing any gainful

2  activity, regardless of his or her age, education or work experience."  20 C.F.R. §§

3  404.1525; 416.925.  "Listed impairments are purposefully set at a high level of

4  severity because 'the listings were designed to operate as a presumption of

5  disability that makes further inquiry unnecessary.' "  *Kennedy v. Colvin*, 738 F.3d

6  1172, 1176 (9th Cir. 2013) (citing *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)).

7  "Listed impairments set such strict standards because they automatically end the

8  five-step inquiry, before residual functional capacity is even considered."

9  *Kennedy,* 738 F.3d at 1176.  If a claimant meets the listed criteria for disability, she

10  will be found to be disabled.  20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).

11      "To *meet* a listed impairment, a claimant must establish that he or she meets

12  each characteristic of a listed impairment relevant to his or her claim."  *Tackett,*

13  180 F.3d at 1099 (emphasis in original); 20 C.F.R. §§ 404.1525(d), 416.925(d).

14  "To *equal* a listed impairment, a claimant must establish symptoms, signs and

15  laboratory findings 'at least equal in severity and duration' to the characteristics of

16  a relevant listed impairment . . . ."  *Tackett*, 180 F.3d at 1099 (emphasis in original)

17  (quoting 20 C.F.R. § 404.1526(a)).  "If a claimant suffers from multiple

18  impairments and none of them individually meets or equals a listed impairment,

19  the collective symptoms, signs and laboratory findings of all of the claimant's

20  impairments will be evaluated to determine whether they meet or equal the

ORDER - 16

characteristics of any relevant listed impairment." *Tackett*, 180 F.3d at 1099.

However, " '[m]edical equivalence must be based on medical findings," and "[a]

generalized assertion of functional problems is not enough to establish disability at

step three.' " *Id*. at 1100 (quoting 20 C.F.R. § 404.1526(a)).

The claimant bears the burden of establishing her impairment (or

combination of impairments) meets or equals the criteria of a listed impairment.

*Burch*, 400 F.3d at 683. "An adjudicator's articulation of the reason(s) why the

individual is or is not disabled at a later step in the sequential evaluation process

will provide rationale that is sufficient for a subsequent reviewer or court to

determine the basis for the finding about medical equivalence at step 3." Social

Security Ruling (SSR) 17-2P, 2017 WL 3928306, at *4 (effective March 27,

2017).

Here, the ALJ found that Plaintiff's impairments and combinations of

impairments did not meet or equal any listings, including listings 12.04

(depressive, bipolar and related disorders), and 12.15 (trauma- and stressor-related

disorders). Tr. 18. The Paragraph B criteria associated with these two listings are

met if the impairment results in an "extreme" limitation of one, or a "marked"

limitation of two, of the following areas of mental functioning: understand,

remember, or apply information; interact with others; concentrate, persist, or

maintain pace; and adapt or manage oneself. 20 C.F.R. § 404, Subpart P,

Appendix I.  A marked limitation means functioning independently, appropriately, effectively, and on a sustained basis is seriously limited.  *Id*.  An extreme limitation is the inability to function independently, appropriately, effectively, and on a sustained basis.  *Id*.

The ALJ found that Plaintiff had moderate restrictions in concentrating, persisting, or maintaining pace.  Tr. 19.  This area of mental functioning refers to a claimant's ability "to focus attention on work activities and stay on task at a sustained rate."  20 C.F.R. § 404, Subpart P, Appendix I.  The ALJ noted that while Plaintiff alleged ongoing anxiety, particularly hypervigilance and difficulty with concentration and attention, upon mental status examination her cognitive functions were good, she was not distracted or inattentive, and she did not have to be redirected.  Tr. 19 (citing Tr. 1828-29).  Plaintiff does not challenge this finding, ECF No. 13 at 12-15, thus, any challenge is waived.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (determining Court may decline to address on the merits issues not argued with specificity); *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief).

The ALJ found that Plaintiff had moderate difficulties in adapting or managing oneself.  Tr. 19.  This area of mental functioning refers to a claimant's ability "to regulate emotions, control behavior, and maintain well-being in a work

1  setting." 20 C.F.R. § 404, Subpart P, Appendix I.  The ALJ highlighted that the

2  record showed Plaintiff was regularly well-groomed and appropriately dressed,

3  however her "improved but ongoing anxiety would reasonably limit her ability to

4  handle workplace changes." Tr. 19 (citing Tr. 1566-1947).  Plaintiff does not

5  challenge this finding, ECF No. 13 at 12-15, thus any challenge is waived.  *See*

6  *Carmickle*, 533 F.3d at 1161 n.2; *Kim*, 154 F.3d at 1000.

7        The ALJ found that Plaintiff had moderate restrictions in understanding,

8  remembering, or applying information.  Tr. 18.  This area of mental functioning

9  refers to a claimant's ability "to learn, recall, and use information to perform work

10  activities." 20 C.F.R. § 404, Subpart P, Appendix I.  The ALJ observed that upon

11  mental status examination, Plaintiff's memory functions were good, with Plaintiff

12  able to recall details about her past medical history and specifics of recent and

13  remote events.  Tr. 18 (citing Tr. 1888).  Plaintiff challenges the ALJ's conclusion,

14  arguing that her ability to understand, remember, and apply information is

15  markedly impacted by her mental health conditions.  ECF No. 13 at 15; *see, e.g.,*

16  Tr. 1211 (January 6, 2017: during a confrontational appointment with a provider,

17  Plaintiff allegedly asserted the doctor made several statements he did not make,

18  and allegedly misconstrued others); Tr. 551, 1534 (October 27, 2016 and August

19  30, 2017: mental health evaluations have shown poor memory and that Plaintiff is

20  a poor historian); Tr. 552 (October 27, 2016: Plaintiff's diagnosed conditions were

ORDER - 19

noted to disrupt her functioning on a daily basis).  The Court must consider the

ALJ's decision in the context of "the entire record as a whole," and if the

"evidence is susceptible to more than one rational interpretation, the ALJ's

decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198

(9th Cir. 2008) (internal quotation marks omitted).  Although Plaintiff cites

treatment notes to support her contention that she had memory issues and an

alleged miscommunication with a provider, evidence from mental status

examinations throughout the record reflect moderate limitations related to this

functional area.  *See, e.g.,* Tr. 1888 (October 19, 2017: upon mental status

examination, Plaintiff's provider noted there was "no evidence for distractibility or

inattention ... her memory functions were also good," with Plaintiff able to recall

details about her past medical history and specifics of recent and remote events);

Tr. 1840 (November 9, 2017: upon mental status examination, Plaintiff's provider

noted there was "no evidence for any cognitive impairments"); Tr. 1828-29

(January 4, 2018: upon mental status examination, Plaintiff's provider noted that

there was no abnormal thought processing, Plaintiff did not have flight of ideas or

tangential patterns, her cognitive functions were good, she was not distracted or

inattentive, and she did not have to be redirected").  The ALJ's conclusion that

Plaintiff had moderate limitations in understanding, remembering, or applying

ORDER - 20

1    information is a reasonable interpretation of the evidence.  This finding is

2    supported by substantial evidence.

3           The ALJ found that Plaintiff had moderate difficulties in interacting with

4    others.  Tr. 19.  This area of mental functioning refers to a claimant's ability "to

5    relate to and work with supervisors, co-workers, and the public."  20 C.F.R. § 404,

6    Subpart P, Appendix I.  The ALJ noted that Plaintiff asserted she "lacks confidence

7    and is in a constant state of anxiety and worry."  Tr. 19 (citing Tr. 957).  Plaintiff

8    cites treatment notes to argue that the ALJ's moderate finding was not supported

9    by substantial evidence.  ECF No. 13 at 13-15; *see, e.g.,* Tr. 1329 (April 11, 2017:

10   Plaintiff presented to the emergency department "because she was out of options,"

11   as the pain resulting from her injury caused exacerbations of her anxiety); Tr.

12   1211, 1491, 1534 (multiple doctors noted anger and irritability during Plaintiff's

13   appointments); Tr. 720, 1330 (records indicate estrangement from significant

14   others due to Plaintiff's conditions); Tr. 1332 (Plaintiff endorsed suicidal ideation);

15   Tr. 1342 (Plaintiff described being "overstimulated" with emotions and having

16   difficulty regulating them); Tr. 1544 (Plaintiff endorsed auditory hallucinations

17   and racing thoughts); Tr. 552, 1535 (Plaintiff reported having trouble relaxing and

18   being easily annoyed or irritable).  However, the ALJ found that Plaintiff's

19   subjective reports were "completely inconsistent" with her primary care records.

20   Tr. 20-22; *see, e.g.,* Tr. 396 (May 7, 2017: Plaintiff reported that she was able to go

ORDER - 21

out alone and shop in stores); Tr. 1624-27 (May 25, 2017: upon examination,

Plaintiff was alert, oriented, pleasant, and appropriate while reporting medical

improvement with the use of Cymbalta); Tr. 1602 (June 27, 2017: Plaintiff had a

pleasant and appropriate affect upon examination); Tr. 1839-40 (November 9,

2017: Plaintiff reported better interaction with her immediate family, and reported

that "she cannot recall when she has felt as good as she has now;" treatment notes

showed Plaintiff was "bright in her affect... she was engaging, upbeat and clearly

much more positive in her attitude and feelings about the medications."); Tr. 1769

(February 8, 2018: Plaintiff reported that she had begun a new relationship and was

taking on a lot of responsibility for the care of her new boyfriend's children).  The

ALJ's conclusion of moderate limitations in interacting with others is a reasonable

interpretation of the evidence.  This finding is supported by substantial evidence.

The ALJ's step three finding is supported by substantial evidence in the

record.  Plaintiff is not entitled to remand on this ground.

**D.    Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on clear and convincing reasons in

discrediting her symptom claims.  ECF No. 13 at 9-12.  An ALJ engages in a two-

step analysis to determine whether to discount a claimant's testimony regarding

subjective symptoms.  SSR 16–3p, 2016 WL 1119029, at *2.  "First, the ALJ must

determine whether there is objective medical evidence of an underlying

ORDER - 22

1  impairment which could reasonably be expected to produce the pain or other

2  symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The

3  claimant is not required to show that [the claimant's] impairment could reasonably

4  be expected to cause the severity of the symptom [the claimant] has alleged; [the

5  claimant] need only show that it could reasonably have caused some degree of the

6  symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

7       Second, "[i]f the claimant meets the first test and there is no evidence of

8  malingering, the ALJ can only reject the claimant's testimony about the severity of

9  the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

10  rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

11  omitted). General findings are insufficient; rather, the ALJ must identify what

12  symptom claims are being discounted and what evidence undermines these claims.

13  *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th 1996); *Thomas v. Barnhart*,

14  278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it

15  discounted claimant's symptom claims)). "The clear and convincing [evidence]

16  standard is the most demanding required in Social Security cases." *Garrison v.*

17  *Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec.*

18  *Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

19       Factors to be considered in evaluating the intensity, persistence, and limiting

20  effects of a claimant's symptoms include: 1) daily activities; 2) the location,

ORDER - 23

duration, frequency, and intensity of pain or other symptoms; 3) factors that

precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

side effects of any medication an individual takes or has taken to alleviate pain or

other symptoms; 5) treatment, other than medication, an individual receives or has

received for relief of pain or other symptoms; 6) any measures other than treatment

an individual uses or has used to relieve pain or other symptoms; and 7) any other

factors concerning an individual's functional limitations and restrictions due to

pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§

404.1529(c), 416.929(c).  The ALJ is instructed to "consider all of the evidence in

an individual's record," to "determine how symptoms limit ability to perform

work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could

reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

statements concerning the intensity, persistence, and limiting effects of her

symptoms were not entirely consistent with the evidence.  Tr. 20.

### 1. *Improvement with Medication*

The ALJ discounted Plaintiff's symptom claims because her mental health

symptoms were improved by and effectively controlled with medication.  Tr. 20-

22.  The effectiveness of medication and treatment is a relevant factor in

determining the severity of a claimant's symptoms.  20 C.F.R. §§ 404.1529(c)(3),

ORDER - 24

416.929(c)(3) (2017); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (recognizing that conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits) (internal citations omitted); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (A favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations.).

Here, the ALJ noted that although Plaintiff testified to "only minimal, if any, improvement in her symptoms," the longitudinal record, including the objective medical evidence, clinical observations of professionals, and her own contemporaneous reports to providers, demonstrated improvement in her mental health symptoms with the use of medication. Tr. 20-22; *see, e.g.,* Tr. 1624-27 (May 25, 2017: treatment records showed Plaintiff being treated initially with Hydroxyzine and then Cymbalta for her mental health symptoms; on Cymbalta she was noted to have "significant improvement" and "overall the anxiety and the pain have improved because she feels she is better equipped to deal with it;" Plaintiff reported that "[s]he feels her Cymbalta seems to help with her pain/depression;" upon examination Plaintiff was alert and oriented to person, place, time and event, her speech was clear and articulate, she was "pleasant and appropriate ... she sits much more still today."); Tr. 1602 (June 27, 2017: Plaintiff appeared alert and oriented, with clear, articulate speech, and pleasant and appropriate affect upon

ORDER - 25

examination); Tr. 1897-99 (October 5, 2017: Plaintiff stopped taking Cymbalta but continued to use Buspirone and Hydroxyzine; she reported her anxiety was "about the same," and upon examination she was "pleasant and appropriate"); Tr. 1887-89 (October 19, 2017: upon examination Plaintiff was guarded and "marginally cooperative," with an irritated affect, but she described her mood as fair; the provider noted there was "no evidence for distractibility or inattention ... [h]er memory functions were also good," with Plaintiff able to recall details about her past medical history and specifics of recent and remote events; the provider also noted Plaintiff had "obsessional thinking but she denied compulsive behaviors or rituals;" Plaintiff was diagnosed with major depressive disorder, PTSD, and social phobia, and the provider recommended increased Buspirone and prescribed Alprazolam and Clonazepam); Tr. 1839-40 (November 9, 2017: Plaintiff reported better interaction with her immediate family, and noted she could not recall when she had felt "as good as she has now"; Plaintiff had not experienced adverse reactions, her sleep patterns were markedly improved, and she was learning to control her panic attacks with her medications; she was "bright in her affect... she was engaging, upbeat and clearly much more positive in her attitude and feelings about the medications;" she denied dark or self-destructive thoughts, there was no evidence of any cognitive impairments, and she did not show any distractibility or inattention.); Tr. 1828-29 (January 4, 2018: Plaintiff reported improved sleep,

ORDER - 26

decreased nightmares, and reduced anxiety symptoms with Xanax; she "described her mood as being good in general and much more stable than it has been"; upon examination her cognitive functions were good, there was no abnormal thought processing, and she did not have flight of ideas or tangential thinking; she "was not distracted or inattentive and did not have to be redirected during the interview;" Plaintiff's provider noted that she was "working towards a stable income and perhaps at some point returning to some type of employment, which again is a much more hopeful and positive thinking than when we originally met."); Tr. 1802 (January 24, 2018: Plaintiff no longer needed daily Xanax); Tr. 1768-69 (February 8, 2018: at a psychiatric follow-up, Plaintiff reported that her "motivation and interest for doing things is certainly improved.  Overall, she feels that her tolerance and mood are better, and she describes actually feeling happy and safe again"; upon mental status examination, Plaintiff was "talkative, pleasant, and engaging," with cognitive functions "quite good," and while she continued to display some social phobia, it was noted that "the symptoms are more controlled"; the provider noted that Plaintiff was "showing marked improvement with her current medications and seems more relaxed and confident than before.").

Plaintiff, while agreeing that "some of her symptoms may have improved," argues that the records still note severe symptoms despite changes in medication. ECF No. 13 at 11-12 (citing Tr. 1768-69).  Plaintiff also asserts that the records do

ORDER - 27

not show that her symptoms have disappeared entirely. *Id*. at 12. It is the ALJ's

responsibility to resolve conflicts in the medical evidence. *Andrews v. Shalala*, 53

F.3d 1035, 1039 (9th Cir. 1995). Where the ALJ's interpretation of the record is

reasonable as it is here, it should not be second-guessed. *Rollins v. Massanari*, 261

F.3d 853, 857 (9th Cir. 2001). The Court must consider the ALJ's decision in the

context of "the entire record as a whole," and if the "evidence is susceptible to

more than one rational interpretation, the ALJ's decision should be upheld." *Ryan*,

528 F.3d at 1198 (internal quotation marks omitted). On this record, the ALJ

reasonably concluded that Plaintiff's mental impairments, when treated with

medication, were not as limiting as Plaintiff claimed. This was a clear and

convincing reason, supported by substantial evidence, to discount Plaintiff's

symptom claims.

### 2. Inconsistent with Daily Activities

The ALJ found that Plaintiff's activities were inconsistent with the level of

impairment Plaintiff alleged. Tr. 22. An ALJ may consider a claimant's activities

that undermine reported symptoms. *Rollins*, 261 F.3d at 857. If a claimant can

spend a substantial part of the day engaged in pursuits involving the performance

of exertional or nonexertional functions, the ALJ may find these activities

inconsistent with the reported disabling symptoms. *Fair v. Bowen*, 885 F.2d 597,

603 (9th Cir. 1989); *Molina*, 674 F.3d at 1113. "While a claimant need not

vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a

claimant's symptom claims when the claimant reports participation in everyday

activities indicating capacities that are transferable to a work setting" or when

activities "contradict claims of a totally debilitating impairment." *Molina*, 674

F.3d at 1112-13.

Here, the ALJ noted that Plaintiff reported physical and mental health

symptoms that limited her ability to lift, squat, bend, stand, walk, sit, kneel, climb

stairs, concentrate, and get along with others. Tr. 20 (citing Tr. 398). The ALJ

also cited Plaintiff's reports that she had poor sleep, poor appetite, low energy and

motivation, extreme anxiety and racing thoughts, chronic pain and various somatic

symptoms, she lacked confidence, and was in a constant state of anxiety and

worry. Tr. 20 (citing Tr. 957). However, the ALJ noted that Plaintiff engaged in

activities that were incompatible with her alleged disabling limitations. Tr. 22.

The ALJ observed that Plaintiff reported she cared for her son, made simple meals,

folded laundry, swept the floor, picked up the yard, went out alone, drove, shopped

in stores, and managed financial accounts. Tr. 22 (citing Tr. 393-400). The ALJ

specifically found that Plaintiff's ability to care for her son and maintain a

household independently suggested an adequate ability to adapt and manage

herself, her ability to go out alone and shop in stores suggested reasonably intact

social functioning, and her ability to drive and manage financial accounts

suggested an intact ability to concentrate and maintain attention.  Tr. 22.  The ALJ

also noted that Plaintiff reported to a provider during the relevant period that she

had begun a new relationship and was taking on a lot of responsibility for the care

of her new boyfriend's children.  Tr. 22.  The ALJ found that Plaintiff's ability to

take on this childcare responsibility suggested intact mental functioning, including

the ability to deal with new stressors.  Tr. 22 (citing Tr. 1769).  The ALJ

reasonably concluded that these activities were inconsistent with the debilitating

level of impairment Plaintiff alleged.  Tr. 22.

Plaintiff challenges the ALJ's finding by asserting that she testified as to her

need for constant breaks when doing household chores and caring for her child,

particularly stopping because of the pain.  ECF No. 13 at 12 (citing Tr. 169-70).

An ALJ may discount a claimant's symptom claims when the claimant reports

participation in everyday activities that "contradict claims of a totally debilitating

impairment."  *Molina*, 674 F.3d at 1112-13.  Here, the ALJ identified Plaintiff's

specific alleged impairments and noted specific activities that indicated Plaintiff

was less limited than she alleged.  Tr. 22.  This was a clear and convincing reason

to give less weight to Plaintiff's subjective symptom testimony.

### 3.  Inconsistent with Childcare Activities

The ALJ discounted Plaintiff's symptom claims as inconsistent with the

ability to independently care for her son.  Tr. 22.  The ability to care for others

ORDER - 30

1  without help has been considered an activity that may undermine claims of totally

2  disabling pain. *Rollins*, 261 F.3d at 857.  For care activities to serve as a basis for

3  the ALJ to discredit a claimant's symptom claims, the record must identify the

4  nature, scope, and duration of the care involved, showing that the care is "hands

5  on" rather than a "one-off" care activity. *Trevizo v. Berryhill*, 871 F.3d 664, 675-

6  76 (9th Cir. 2017).  Here, the ALJ noted that Plaintiff reported she cared for her

7  son.  Tr. 22 (citing Tr. 393-400).  The ALJ also observed that Plaintiff reported to a

8  provider during the relevant period that she had begun a new relationship and was

9  taking on a lot of responsibility for the care of her new boyfriend's children.  Tr.

10  22 (citing Tr. 1769) (February 8, 2018: "[Plaintiff] is learning to accommodate

11  weekend visits with [her boyfriend's] children and is taking on a lot of

12  responsibility for their care and wellbeing.")  The record provides additional

13  insight into Plaintiff's childcare activities. *See* Tr. 732, 734 (April 6, 2017:

14  Plaintiff reported to a provider that she was the primary caregiver for her four-year

15  old child); Tr. 394 (May 7, 2017: Plaintiff reported that she would make meals for

16  her son, bathe him, and help him with his schoolwork); Tr. 169-70 (June 4, 2018:

17  Plaintiff testified that on a typical day she would feed her son and play with him,

18  go over schoolwork with him, and hang out with him).  The ALJ properly found

19  that Plaintiff's childcare activities did not support her subjective symptom

20  complaints.

ORDER - 31

### 4. *Lack of Supporting Medical Opinion Evidence*

The ALJ found that Plaintiff's symptom complaints were not supported by the medical evidence, as no medical source offered an opinion supportive of long-term disability. Tr. 23. An ALJ's credibility finding based in part on a determination that the claimant's testimony is "unsupported by…any persuasive reports of his doctors" is not erroneous. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). The ALJ observed that medical examiner, Dr. McKenna, testified that Plaintiff had no severe physical impairments. Tr. 137-46. The ALJ also noted that in an independent medical examination, Drs. Jessen, McCormick, and Chong opined that Plaintiff had no objective abnormalities and they found no physical reason preventing Plaintiff from returning to work. Tr. 1475-1506. Further, the State agency medical and psychological consultants all opined that Plaintiff was not disabled. Tr. 182-95, Tr. 197-210, Tr. 212-26, Tr. 228-42. Plaintiff asserts that "[b]ecause the ALJ did not assess the opinions of examining or treating mental health providers, he should have requested an independent evaluation to assess the full extent of impairments on [Plaintiff's] ability to work." ECF No. 13 at 12. However, "[a]n ALJ is not required to order every medical evaluation that could conceivably shed light on a claimant's condition, but rather just those that would resolve ambiguities or inadequacies in the record." *Lloyd v. Astrue*, No. C-11-4902-EMC, 2013 WL 503389, at *5 (N.D.

Cal. Feb. 8, 2013) (*citing Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001)). Plaintiff's disagreement with the ALJ's conclusions does not make the record ambiguous or inadequate. *See Leitner v. Comm'r Soc. Sec.*, 361 F. App'x 876, 877 (9th Cir. 2010) (the "claimant bears the burden" of establishing that symptoms interfere with his or her ability to "perform basic work activities," and the ALJ, on that record, could make such a determination) (citations omitted). Based on this record, the ALJ reasonably concluded that Plaintiff's allegations of complete disability were not supported by the medical opinion evidence. This finding is supported by substantial evidence.

### 5. Motivated by Secondary Gain

The ALJ discounted Plaintiff's symptom claims because evidence in the record suggested monetary gain was a primary motivating factor for her disability application. Tr. 20. Evidence of being motivated by secondary gain is sufficient to support an ALJ's rejection of testimony evidence. *See Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992). Therefore, the tendency to exaggerate or engage in manipulative conduct during the process is a permissible reason to discount the credibility of a claimant's reported symptoms. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). Here, the ALJ highlighted a counseling record notation which stated that Plaintiff "would like to get a job as her Social Security Claim was denied a second time." Tr. 20 (citing

ORDER - 33

Tr. 1525).  The ALJ also noted that Plaintiff's primary care records showed

sustained objective medical improvement and documented Plaintiff's subjective

statements endorsing medical improvement.  Tr. 20.  However, the ALJ observed

that those records stood "in stark contrast" to Plaintiff's treatment notes from her

return to counseling, where she endorsed multiple symptoms of anxiety and

depression and asserted no meaningful relationships or social interaction.  Tr. 20

(citing Tr. 1520-44).  After citing the discrepancy between Plaintiff's primary care

records and her counseling report with the notation about her disability claim being

denied, the ALJ determined that this notation suggested income was a primary

motivating factor for Plaintiff's disability application, rather than a complete

inability to work.  Tr. 20.  The ALJ cited to no other instances in the record that

suggested monetary gain was a primary motivating factor for Plaintiff's disability

application.  If the ALJ erred by finding that Plaintiff was motivated by secondary

gain, any error would be harmless because the ALJ identified numerous specific,

clear, and convincing reasons to discount Plaintiff's symptom claims.  *See*

*Carmickle*, 533 F.3d at 1162-63; *Molina*, 674 F.3d at 1115 ("[S]everal of our cases

have held that an ALJ's error was harmless where the ALJ provided one or more

invalid reasons for disbelieving a claimant's testimony, but also provided valid

reasons that were supported by the record."); *Batson*, 359 F.3d at 1197 (holding

that any error the ALJ committed in asserting one impermissible reason for

ORDER - 34

1  claimant's lack of credibility did not negate the validity of the ALJ's ultimate

2  conclusion that the claimant's testimony was not credible).

3  **E.    RFC Formulation**

4        Plaintiff asserts the ALJ erred by failing to incorporate any physical

5  limitations into the RFC.  ECF No. 13 at 15-17.  At step four of the sequential

6  evaluation, the ALJ must determine the claimant's RFC.  20 C.F.R. §§

7  404.1520(a)(4)(iv) 416.920(a)(4)(iv) (2012).  "[T]he ALJ is responsible for

8  translating and incorporating clinical findings into a succinct RFC."  *Rounds v.*

9  *Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).  To the extent the

10  evidence could be interpreted differently, it is the role of the ALJ to resolve

11  conflicts and ambiguity in the evidence.  *Morgan v. Comm'r of Soc. Sec. Admin.*,

12  169 F.3d 595, 599-600 (9th Cir. 1999).

13        The ALJ identified only mental health impairments as severe impairments at

14  step two.  Tr. 18.  Plaintiff argues that "the analysis of [Plaintiff's] RFC changes

15  dramatically if any physical conditions are added to her list of severe

16  impairments."  ECF No. 13 at 16.  Plaintiff asserts that difficulties with her heart

17  would require additional breaks and absences, or limitations in the amount of time

18  she would be able to stand, walk, or sit.  ECF No. 13 at 17.  The ALJ found

19  Plaintiff's tachycardia to be a non-severe impairment and Plaintiff did not

20  challenge this finding.  Tr. 18.  As discussed *supra*, the ALJ did not err at step two

by failing to find that Plaintiff's lumbar condition was a severe impairment. Tr. 18. Here, the ALJ accounted for all limitations that the evidence reasonably supported. This RFC formulation reflects a reasonable interpretation of the evidence. Plaintiff identifies no evidence in the record to undermine the ALJ's conclusion. ECF No. 13 at 15-17. Therefore, the ALJ's RFC formulation is supported by substantial evidence.

Moreover, Plaintiff's argument is without merit. The Court notes that Plaintiff argues the record indicates she should be limited to light or sedentary work. ECF No. 13 at 17. As discussed above, the ALJ found that Plaintiff was capable of working as a mail clerk, which is classified as light work, and as a printed circuit board assembler, which is classified as sedentary work. Tr. 25. The vocational expert also testified that Plaintiff would be capable of other work even if she were physically limited to the light exertional level, with a sit/stand option at will; no climbing ladders, ropes or scaffolds but occasionally performing all other postural activities; with no concentrated exposure to extreme cold, vibration, or hazards. Tr. 25. The vocational expert testified that an individual with such limitations would be able to perform the light exertional level jobs of collator operator, office helper, and mail clerk. Tr. 25. Based on this record, Plaintiff has shown no error in the ALJ's formulation of the RFC. *See Shinseki*, 556 U.S. at

ORDER - 36

409-10 (the party challenging the ALJ's decision bears the burden of showing

harm).

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the

ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 14**, is

**GRANTED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to

counsel, and **CLOSE THE FILE.**

DATED April 15, 2020.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 37